OPINION AND ORDER
 

 SARGUS, District Judge.
 

 This matter is before the Court for consideration of several motions, beginning with the motion of Nationwide Mutual Insurance Company (“Nationwide”) for judgment on the pleadings and/or partial summary judgment (Doc. 137); the motion of The Home Insurance Company (“Home”) to stay confirmation and vacatur proceedings pending final award or, alternatively, a stay pending consideration of Home’s motion for discovery (Doc. 140); the motion of Home to compel Nationwide’s compliance with the arbitration clause of reinsurance contract (Doc. 142); the motion of Home to vacate or to modify the Arbitration Panel’s July 6, 1999 ruling (Doc. 159); the motion of Home for limited discovery on arbitral bias and misconduct (Doc. 160); the motion of Home for an order confirming an arbitration award of December 4, 1998 (Doc. 190); the motions of Nationwide for orders confirming arbitration award (Docs. 136 & 196); the motion of Nationwide’s for reconsideration of this Court’s order issued September 29, 1999 (Doc. 197); and finally, the cross-motion of Home to vacate the Arbitration Panel’s December 17,1999 ruling (Doc. 202).
 

 I.
 

 As explained in previous orders from this Court,
 
 [1]
 
 this dispute involves a reinsurance agreement concerning a pool managed by the London firm of M.E. Rutty Underwriting Agency Limited (“Rutty”). As a member of the pool, Nationwide authorized Rutty to obtain, underwrite, and service both direct and reinsurance business. While the pool member under whose name the policies were issued was directly responsible to the insured, the premiums and losses were divided among and between other members of the pool.
 

 After Nationwide withdrew from the Rutty pool in 1966, it continued to have ongoing obligations to the pool as a result of continuing or contingent liabilities. In 1977, Nationwide entered into an agreement with The Home Insurance Company (“Home”) by which Nationwide was to cutoff its potential losses through a reinsurance agreement with Home. In 1995, Nationwide sued Home, claiming that Home breached the contract under which it was required to cover claims against Nationwide arising from Nationwide’s obligations to the Rutty pool.
 

 On October 21, 1996, this Court ordered that Nationwide and Home submit the issues raised in this case to binding arbitration, as agreed to by the parties in the 1977 contract. In the same Order, this Court stayed the proceedings pending arbitration. Thereafter, however, on March 25,1997, this Court also ordered defendant CIGNA Corporation (“CIGNA”) to arbitration and, according to this Court’s order, the entire action was dismissed.
 

 On August 6, 1998, the Court of Appeals subsequently reversed this Court’s decision of March 25, 1997, and held that CIGNA could not be compelled to submit to arbitration.
 
 Nationwide v. Home,
 
 150 F.3d 545 (6th Cir.1998),
 
 cert. denied,
 
 525
 
 *896
 
 U.S. 1140, 119 S.Ct. 1030, 143 L.Ed.2d 39 (1999). The Court of Appeals also concluded that Nationwide could not pursue its claims directly against CIGNA, which had entered into a purchase and assumption- agreement with Home, obligating CIGNA to perform Home’s duties concerning the Rutty Pool. The Court of Appeals directed that the case be dismissed in its entirety.
 

 Subsequently, Nationwide and Home submitted the dispute to arbitration, which remains ongoing. Nationwide, with an understandable measure of caution, filed simultaneously an original Complaint in a new case seeking confirmation of various orders issued by the Panel of Arbitrators,
 
 [2]
 
 as well as a motion to confirm award in the otherwise dismissed case. The new case, captioned C2-98-1008, has been consolidated with the older, dismissed case, C2-95-880, by Order dated October 19, 1998. This Court is of the view that the various types of relief sought in this case, including confirmation of various awards issued by the Panel of Arbitrators sought by both Nationwide and Home, together, with Home’s motion to vacate or modify several awards issued by the same Panel, are new matters correctly raised in the 1998 case. The parties have briefed the issues raised herein in a manner that such determination poses no prejudice to either side.
 

 II.
 

 The Court will first address Nationwide’s motion for reconsideration of the Opinion and Order issued on September 29, 1999. In the Order, this Court held that confirmation of decisions issued by the original panel was premature, in part because the arbitration was ongoing. Moreover, Home had filed a motion to vacate or modify, the awards based on allegations of arbitral bias or misconduct. Home also sought discovery, including the deposing of members of the Panel.
 

 It was then, and still is, the hope of the undersigned that the arbitration could proceed to an expeditious conclusion. It was also the view of the Court that its confirmation or vacation powers should be used to effectuate an efficient and fair resolution of disputes through arbitration. On balance, the undersigned concluded that analyzing issues of bias, including allegations as to the personal conduct of arbitrators before arbitration had concluded, would frustrate, not facilitate, arbitration.
 

 Nationwide asks for a reexamination of this decision. In most instances, this Court is reluctant to revisit a prior decision. To do so undercuts the goals of finality and certainty. Nonetheless, this Court is convinced that the premises underlying the prior order are no longer valid and that reconsideration is appropriate.
 

 The Court begins the analysis with recognition of the fact that the Federal Arbitration Act, 9 U.S.C. § 1
 
 et seq.,
 
 codifies a strong public policy in favor of arbitration.
 
 E.g., Andersons, Inc. v. Horton Farms, Inc.,
 
 166 F.3d 308, 322 (6th Cir.1998). Courts are to exercise the limited authority granted with regard to matters submitted to arbitration in ways that promote and effectuate arbitration.
 

 In this context, this Court now, for at least four reasons, believes that issues it earlier described as premature or unripe for decision must now be resolved in order to make meaningful the arbitration process. First, as of December 2, 1999, notwithstanding Home’s opposition to a piecemeal confirmation process, both Home and Nationwide have moved for confirmation. Second, the original Panel which Home claims exhibited arbitral bias has resigned and a new Panel is proceeding. This Court no longer faces the potential prospect of ordering discovery, including the depositions of arbitrators, while the pro
 
 *897
 
 cess remains ongoing. Third, given the length of the arbitration process, the acrimony of the parties and counsel, and the obvious need for finality, this Court concludes that the arbitration process will be enhanced by a decision confirming or vacating the awards in question. Finally, although this factor did not influence the Court in its prior decision, the panel has held on December 17, 1999 that the phrase “final decision” subject to confirmation according to the contract at issue means disposition of a “specific, discrete issue” and subject to judicial confirmation. While the Court does not disregard the decision of the Panel, the question of what is a “final decision” in this case is
 
 both
 
 a contract issue, to be answered by the panel, and a subject matter jurisdiction issue under the Federal Arbitration Act, to be answered only by this Court.
 

 Many courts have permitted confirmation of orders issued by arbitrators which do not finally resolve the arbitration. In
 
 Island Creek Coal Sales Co. v. City of Gainesville,
 
 729 F.2d 1046 (6th Cir.1984), the court enforced an arbitrator’s award of specific performance, even though the price of the product to be delivered was subject to further arbitration. The court noted that the goal of enforcement of interim awards was efficient and effect resolution of disputes through arbitration. The interim award finalized a “separate, discrete, independent, severable issue.”
 
 Id.
 
 at 1049 (citation omitted);
 
 see also Yasuda Fire & Marine Ins. v. Continental Cas. Co.,
 
 37 F.3d 345 (7th Cir.1994);
 
 Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.,
 
 935 F.2d 1019 (9th Cir. 1991).
 

 The Court concludes that all of the motions to confirm various orders issued by the panel of arbitrators now are ripe for resolution.
 
 [3]
 
 These include the following:
 

 1. The Order of March 6, 1998, which rejected Home’s claim for rescission. (Doc. 84) In turn, Home has moved to vacate or modify this Order based on evident partiality and arbitral bias and for discovery as to such issues. (Doc. 140)
 

 2. The Order of July 6, 1998 in which the panel awarded Nationwide $300,000 to be paid by Home. (Doc. 136) Home has moved to vacate this award, again on the grounds of evident partiality and arbitral bias. (Doc. 159)
 

 3. The Order of December 4, 1998, in which the panel determined that Home is not liable for Nationwide’s obligations resulting from the operation of the cross liability agreement between Nationwide and other Rutty pool members; that Home is liable only for Nationwide’s fixed pool share involvement in the Rutty runoff; and that Nationwide is entitled to 50% reimbursement from the Home for its past, present and future costs associated with the administration of Nationwide’s fixed pool share involvement in the Rutty runoff. (Doc. 190) Nationwide does not oppose this motion, so long as all interim ordei-s are confirmed by the Court. (Nationwide’s Response, Doc. 195, p. 4)
 

 4. The Order of December 17, 1999, in which the panel held that the contracted phrase “final decision” means a “full and final disposition of a specific, discrete issue” and thereby subject to judicial determination. (Doc. 196)
 

 The third and fourth orders were issued by the new panel, whose impartiality has not been challenged. The Court finds that the orders issued by the panel on December 4, 1998 and December 17, 1999 are both appropriate for confirmation. There is no dispute that the parties entered into a valid, binding agreement to arbitrate and that this Court has jurisdiction pursuant to 9 U.S.C. § 9. As the third and fourth orders, none of the grounds set forth in 9 U.S.C. § 10, on which confirmation may be
 
 *898
 
 denied, has been asserted by either Nationwide or Home. The Court therefore grants Nationwide’s Third Motion to Confirm (Doc. 196) and Home’s Motion to Confirm (Doc. 190), and confirms the associated awards issued on December 4,1998 and December 17,1999.
 

 As noted previously, this Court’s jurisdiction under Title 9, the Federal Arbitration Act, is not a subject for arbitration. The Panel may appropriately determine whether the contract permits confirmation of interim awards. This Court alone determines its subject matter jurisdiction. To the extent the Panel has interpreted the language of the contract, the award of December 17, 1999 is confirmed and Home’s cross-motion to vacate the same ruling is denied. (Doc. 202)
 

 The first and second Orders described herein are challenged by Home, which claims that the panel showed evident partiality and bias. Home also seeks discovery as to the same issues. The question of arbitral bias or partiality is before this Court in a variety of contexts. While Nationwide has moved to confirm both awards as set forth in the Complaint filed in C2-98-1008 and by motion in C2-95-880, Home opposes confirmation and has moved to vacate based upon bias and evident partiality. Home has also answered Nationwide’s Complaint seeking confirmation by asserting in Count V that the panel exhibited evident bias. The same claim is made in Home’s sixth affirmative defense. (Doc. 100) Home raises the same issues in its motion seeking discovery. (Doc. 92) In turn, Nationwide has moved for judgment on the pleadings, or alternatively, for partial summary judgment, as to Home’s defenses raised in the Answer.
 

 All of these motions have been extensively (or, more accurately, exhaustively) briefed by the parties. Each of these motions is affected by the claims of Home that the initial panel showed evident partiality or bias. Because the parties have submitted large numbers of documents and affidavits well beyond the pleadings, this claim must be analyzed under Federal Rule of Civil Procedure 56.
 

 Before considering Nationwide’s motion for summary judgment, the Court must first address Home’s motion for limited discovery. Among the discovery requested, Home seeks to depose at least two of the former arbitrators as well as opposing counsel. Obviously, if Home is entitled to discovery, as of yet unconducted, resolution of Nationwide’s motion for summary judgment as to Home’s claims of arbitral bias or partiality is premature.
 

 III.
 

 Arbitration is designed to provide, by agreement, an expeditious and fair resolution of disputed issues. Both finality and fairness are the ultimate goals of the process. After the rendition of a decision, these two goals are in potential conflict. An attempt by a party to investigate, through discovery, whether the arbitrators were neutral and unbiased threatens the conclusiveness of the arbitration process. Consequently, courts are reluctant to permit discovery as to the potential bias of an arbitrator. Such process undermines the authority of the arbitrator and injects delay in confirmation or vacation. At the same time, the Supreme Court has held that “arbitration ... rest[s] on the premise that any tribunal permitted by law to try eases and controversies not only must be unbiased but also must avoid even the appearance of bias.”
 
 Commonwealth Coatings Corp. v. Continental Cas. Co.,
 
 898 U.S. 145, 149, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968).
 
 [4]
 

 As held in
 
 Woods v. Saturn Distrib. Corp.,
 
 78 F.3d 424, 430 (9th Cir.),
 
 cert.
 
 
 *899
 

 denied,
 
 518 U.S. 1051, 117 S.Ct. 30, 135 L.Ed.2d 1123 (1996), “[ajlthough it may be difficult to prove actual bias without deposing the arbitrators, depositions of arbitrators are ‘repeatedly condemned’ by courts.” In the absence of clear evidence of impropriety, a party is not entitled to discovery by way of deposing one or more arbitrators.
 
 Portland Gen. Elec. Co. v. U.S. Bank Trust Nat’l Ass’n,
 
 38 F.Supp.2d 1202 (D.Or., 1999). Further, a party must exercise due diligence and can raise questions of bias or fraud only after the rendition of a decision by the arbitrator.
 
 Woods,
 
 78 F.3d at 430.
 

 Recently, the Court of Appeals for the Sixth Circuit interpreted and defined the term “evident partiality” as used in 9 U.S.C. § 10(a)(2). The court explained that, “evident partiality will be found only ‘where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration’.”
 
 Andersons, Inc. v. Horton Farms, Inc.,
 
 166 F.3d 308, 328-29 (6th Cir.1998) (quoting
 
 Apperson v. Fleet Carrier Corp.,
 
 879 F.2d 1344, 1358 (6th Cir.1989)). “This standard requires a showing greater than an ‘appearance of bias’ but less than ‘actual bias’.... The alleged partiality must be direct, definite, and capable of demonstration, and ‘the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator’.”
 
 Id.
 
 at 329 (citations omitted).
 

 With these considerations in mind, the Court turns to the facts submitted by Home in support of its motion for limited discovery and for vacatur or modification of the award. Home initially challenges the conduct of a Simon Twigden, selected by Nationwide as one of three arbitrators. Subsequently, Home has also claimed that a third arbitrator, William C. Hassard, also showed evident partiality and bias. Has-sard was selected by the agreement of Twigden and Robert C. Reinarz, an arbitrator selected by Home.
 

 The Court first notes that the arbitration agreement itself includes the following language in Article XIII: “All arbitrators shall be executive officers of insurance or reinsurance companies or underwriters at Lloyd’s, London not under the control of either party to this contract.” The agreement to arbitrate required that all selected arbitrators be executive officers of an insurance concern and therefore part of the industry itself. While this point is not determinative, the Court notes that the parties did not bargain for arbitrators who had no business or commercial involvement within the insurance industry.
 

 On February 25,1997, the three selected arbitrators held an organizational and pre-hearing conference. All three arbitrators made various disclosures to the parties. Specifically, Mr. Hassard disclosed that a subsidiary of Republic Financial Services, a company of which he served as Chairman of the Board, had a runoff relationship with Home. He noted that he was not aware of any disputes between the parties and that he had no personal involvement in the runoff relationship. (Certification of Clifford H. Schoenberg, pp. 3-4)
 

 During the organizational meeting, the parties agreed that the panelists had made disclosure of any material relationship they had with respect to the parties and counsel and that both parties accepted the Panel as duly constituted. The parties therefore agreed to the following language:
 

 Now, therefore, both parties agree that they shall not assert any claim or initiate any further action, nor support any such claim or action by or on behalf of others, relating to any alleged bias or lack of disinterestedness against any member of the Panel or contest on such bias or lack of disinterestedness the validity or binding nature of any award or decision the Panel shall render.
 

 (Ex. 1, Doc. 102)
 

 As described above, beginning with an order issued on November 6, 1997, the Panel ordered Home to post a $5 million security. All three members of the Panel agreed to this order. Home vigorously
 
 *900
 
 objected to this order and, ultimately, refused to post the security it was directed to pay by the Panel. Thereafter, on March 6, 1998, a unanimous Panel found that Home had failed to prove fraud and was not entitled to rescind the contract it had entered into with Nationwide. On September 11, 1998, the Panel reaffirmed its order directing Home to post a $5 million security.
 

 Shortly after the September 11, 1998 order, counsel for Home sent the first of a series of letters attacking the partiality of the Panel. The Court finds it instructive that such letters began after the rendition of at least two unfavorable decisions to Home. In a letter dated September 21, 1998, counsel for Home wrote to the Panel that, “... the Panel’s decision appears to reflect a reflexed acceptance of whatever Nationwide says as ‘gospel’ ”.
 

 Not long after, on October 14, 1998, counsel for Home wrote another jeremiad to the Panel. Counsel accused the Panel of “blatant disregard of both the evidence and the clear limits of the Panel’s authority.” (Pg. 1, Exhibit 22, Doc. 93) Counsel further noted that the Panel showed “increasingly unrestrained hostility toward me and my client in an unconscionable partnership in favor of Nationwide.” (Pg. 4 and 5) Finally, counsel accused the Panel of “irrevocably impairing] the integrity of the arbitration proceeding.”
 

 Home asks the Court to consider as evidence of bias certain contacts had by Panelist Twigden with one of Nationwide’s counsel. On June 3, 1998, Twigden sent a fax to counsel for both parties, together with other members of the Arbitration Panel, and advised that he intended to have lunch with Michael Cohen, counsel for Nationwide, on June 8,1998. (Exhibits 28 and 29, Doc. 93) He confirmed to the parties that the Nationwide case would not be mentioned or discussed. The fax which he sent to counsel for both parties advised that he would entertain any questions or observations concerning the proposed luncheon. The parties do not dispute that Home did not object to the meeting, disclosed in advance by Twigden.
 

 A similar event occurred in August of 1998. On August 5,1998, Twigden notified his colleagues on the Panel as well as opposing counsel that he intended to have lunch with a Chris Johnson of Nationwide to discuss issues relating to a subsidiary of the Nationwide group involved in a matter with a company known as H.S. Weavers Stamp. Twigden notified the parties that he acted for a certain company involved in such disputes. He again confirmed that the arbitration would not be mentioned or discussed in any way. (Ex 30, Doc. 93) Two weeks later, and after the luncheon referenced in Twigden’s fax, counsel for Home sent to Twigden a letter demanding that he disclose whether Twigden or his company ever acted for Nationwide, or any of its subsidiaries. Counsel also questioned the June meeting with counsel for Nationwide and demanded to know whether such meeting included discussions of potential business opportunities regarding Nationwide. Finally, counsel concluded that the meetings appeared to Home to create the appearance of impropriety. (Ex. 31, Doc. 93)
 

 Twigden responded the next day by noting that over the years, his firm, as known to counsel for Home, had actually acted on behalf of Home. Twigden noted that the firm had no business relationship with Nationwide but, as a firm, sought to maintain and develop its relationships within the industry as well as with companies such as Home and Nationwide. Most interestingly, Twigden noted, and the same has not been denied, that counsel for Home had previously invited him to meet for lunch the next time that Twigden was in Boca Raton, Florida, on matters unrelated to the arbitration. Twigden described the contact with Nationwide representatives as social and did not involve any type of business relationship concerning Nationwide or its counsel.
 

 
 *901
 
 On August 21, 1998, Mr. Hassard wrote to Home’s counsel and described his dismay at the accusations set forth in Home’s letter. He chastised Home’s counsel for not bringing any objection to Twigderis attention prior to the luncheon engagement. (Ex. 83, Doc. 93) In addition to Hassard, Reinara, the panel member selected by Home, himself objected to Home’s letter of August 19, 1998 to Twig-den. Reinarz emphasized that Twigden had given Home ample opportunity to raise an objection. (Ex. 34, Doc. 93) Both Hassard and Reinarz asked Home to withdraw its letter of objection.
 

 Instead, on August 27, 1999, counsel for Home responded with yet another diatribe. Counsel described the letters from Has-sard and Reinarz as “baseless and gratuitous criticism ... which removes any doubt in our mind about your lack of fairness.” (Pg.2, Ex. 35, Doc. 93)
 

 Home asserts a series of arguments in support of its motion for limited discovery. It first argues that the Panel’s “irrational and unsupportable security rulings in and of themselves entitled Home to discovery.” (Motion for Limited Discovery, p. 8) According to Home, the unanimous Panel decisions with respect to ordering prehearing security were in excess of the Panel’s power and in disregard of the law and evidence. This Court summarily dismisses such argument. As the Sixth Circuit recently noted in the
 
 The Andersons, Inc. v. Horton Farms, Inc.,
 
 “|a]n adverse award in and of itself is no evidence of bias absent some evidence of improper motivation.” 166 F.3d at 330. The policies underlying federal preference for arbitration are wholly defeated if one party can overturn a decision claiming evident partiality simply because it disagrees with conclusions reached by the arbitrators. Further, it is not for this Court to interpret the contract and sit as a reviewing court as to orders issued by the Panel.
 

 Home next argues that the Panel attempted to immunize its security rulings from judicial review by holding on September 11, 1998, that its original security ruling of November 6,1997 was final as of the earlier date. According to Home, such ruling was designed to prevent vacatur of the award, which under the Federal Arbitration Act, must be filed within three months from the date the award was issued. 9 U.S.C. § 12.
 

 The Court is not persuaded by this argument. If anything, the subsequent order of the Panel indicated its frustration that Home was completely ignoring its order of November 6, 1997. Home never posted the security which the Panel directed it to do. The Court finds it most ironic that Home complains of the Panel’s second order, which Home necessitated through its own disobedience of the Panel’s decision.
 

 Without question, the strongest of the Home’s arguments in support of limited discovery is the contact between Twigden and counsel and representatives from Nationwide. The Court first notes that the case law uniformly condemns nondisclosure of any material circumstances which would lead to even an appearance of impropriety.
 
 See Commonwealth Coatings Corp., supra, Woods v. Saturn Distrib. Corp., supra.
 
 In this case, Twigden made full disclosure of both meetings which he intended to hold, first with Nationwide’s counsel, and subsequently with a Nationwide representative. No objection was made by Home in advance of either of the two meetings.
 

 Twigden has affirmatively stated that no mention was ever made of the matter submitted to arbitration. Further, he has unequivocally stated that the law firm in which he practiced had no business relationship with Nationwide during his involvement in the arbitration.
 

 While this Court would have preferred that Twigden had no such contacts during the pendency of the arbitration, the facts set forth do not establish the threshold showing otherwise entitling Home to discovery. The Court reaches this conclusion
 
 *902
 
 for several reasons. First, any claimed showing of evident partiality is negated in part by full disclosure given by Twigden prior to the two challenged meetings. Second, counsel for Home has himself made the same offer to Twigden that the two of them meet for lunch when Twigden was next in Florida. Third, the evidence of record establishes that Twigden did not discuss the pending arbitration during either of the two meetings. Home has submitted no evidence to the contrary. Fourth, neither Twigden nor his firm has any business relationship with Nationwide. Fifth, Home began its attack on Twigden and the Panel in August of 1998, after losing on the issues involving the posting of security (Order of November 6, 1997) and the question of recission (March 6, 1998). Finally, the Court again refers to that portion of the arbitration agreement which requires that the arbitrators come from within the insurance industry and serve as an executive officer of an insurance or reinsurance company. While the terms of the arbitration agreement do not imply that the arbitrators need not be impartial and unbiased, it is also clear that the parties agreed to have the claim submitted to members of a Panel who are actively involved in the business of insurance.
 

 With all of these factors in mind, the Court concludes that with respect to Mr. Twigden’s conduct, Home has not established by “clear evidence of impropriety” its right to limited discovery.
 
 Woods,
 
 78 F.3d at 429.
 

 Home next complains that, as evidence of bias, the Panel permitted violations of its ban on
 
 ex parte
 
 communications. The first circumstances cited by Home are the letters sent by Twigden in which he disclosed his intentions to hold a luncheon on June 8, 1998 with counsel for Nationwide. A similar claim is made with respect to letters sent by Twigden on October 5, 1998. The Court is thoroughly convinced that Home’s complaint of
 
 ex parte
 
 communications can in no way provide a basis for limited discovery. There is no showing of any prejudice to Home. Further, the disclosures had to do with an issue raised by Twigden himself, as to his own conduct, rather than the merits of the case. The fact that Twigden invited comment from counsel as to his planned contacts with Nationwide representatives does not, as an issue of communication, provide any evidence of bias.
 

 Home next argues that the Panel exhibited bias or evident partiality by a series of letters commencing on September 10, 1998, in which the Panel criticized counsel for Home and defended themselves against his accusations. This argument is the least persuasive and, in the Court’s view, borders on the frivolous. Home’s counsel engaged in an unrelenting, unremitting barrage of invectives impugning the integrity of the Panel members, including a panelist selected by Home itself. It is difficult to imagine how Home can complain when the members of the Panel responded by noting their disagreement with Home’s unsupported accusations which essentially called into question the ethics of all- three members of the Panel. The Court further notes that the language used by the Panel in responding to the charges was far more temperate, professional and appropriate than the hyper-inflated, disparaging rhetoric used by Home’s counsel against the Panel.
 

 Home next asserts as evidence of partiality of bias that Mr. Hassard, unbeknownst to the parties, has been engaged in discussions concerning a dispute between Republic and Home as to unpaid balances in a runoff account. According to Home, the circumstances create the appearance of a conflict of interest. The Court first notes that Hassard disclosed the relationship between Home and Republic and described the ongoing runoff process. No party objected to him serving as an arbitrator following such disclosure. As noted above, Home and Nationwide both stipulated at the organizational and prehearing meeting of February 25, 1997,
 
 *903
 
 that both parties waived any subsequent objections as to bias or partiality of the three arbitrators. While such waiver could not apply to circumstances occurring after the organizational meeting, as in the case of Mr. Twigden’s subsequent contacts with Nationwide representatives, such waiver does affect any subsequent claims concerning matters disclosed at such meeting. By disclosing the runoff relationship, Hassard put Home on notice that his company could be involved in a dispute concerning the runoff process.
 

 Further, on October 28, 1998, Hassard made a supplemental disclosure during an arbitration hearing. In response to claims made by Home in its letter of October 23, 1998, Hassard again noted that he had no personal involvement in the resolution of any runoff disputes between Home and Republic. He made a personal inquiry as to the amounts in dispute and determined that Republic is claiming that Home owes it $7,000.00. The Court notes that runoff agreements are long term relationships under which amounts owed or payable between parties fluctuate over the length of the agreement. All of this was reasonably known to Home at the time of Hassard’s initial disclosures.
 

 In the latter half of 1998, more than a year and a half after commencement of the arbitration proceedings, representatives of Home began taking a more aggressive attitude towards Republic with respect to disputes arising in a runoff relationship. (Certificate of Perry Lamorte.) The fact that a dispute has subsequently arisen between Home and Republic does not permit Home now to assert objections to Hassard as a member of the Panel. Hassard acknowledged before the arbitration began that the relationship existed. The Court concludes that the existence of a runoff relationship implies that a dispute could arise during the course of such relationship. Because such issues were clearly known to the parties before the arbitration began, Home cannot complain after the fact that the relationship exists.
 
 [5]
 
 A party must exercise due diligence in asserting any right it has with respect to claims of bias or evident partiality. Home knew of the relationship involving Hassard and took its chances by proceeding to arbitration. It is clearly unhappy with the outcome reached by the unanimous Panel. Nonetheless, the facts it has presented in support of its motion do not demonstrate that Hassard had any personal involvement in a dispute between Home and Republic. The amount in question is of insufficient gravity to create an appearance of bias or actual prejudice, and is otherwise within the expectations of the parties following Hassard’s disclosures.
 

 Home further complains that the record indicates several
 
 ex parte
 
 conversations between Panel members and counsel for Nationwide. The facts submitted in support of this claim involve scheduling conferences and do not concern matters of substance. The Court has no difficulty in determining that calls made to schedule conferences do not indicate evident partiality or bias and cannot be used to support a request for discovery.
 

 Finally, Home accuses Nationwide of filing a motion with the Panel without submitting the same to Home. Tellingly, on October 15, 1998, the Panel itself confirmed that Nationwide had sent copies of its motion to the Panel without notifying Home. It is clear that the Panel itself took corrective means and negated any prospect of harm to Plome.
 

 
 *904
 
 Home has sought to depose Panelists Twigden and Hassard, together with two attorneys representing Nationwide and a partner of Twigden’s in the firm of John Paisner and Company. In addition, Home seeks to serve interrogatories upon Twig-den, Hassard, Nationwide’s counsel, the firm of Nationwide’s counsel and Mr. Twigden’s law firm.
 

 Based upon the foregoing, the Court concludes that Home has not established clear evidence of improper conduct by one or more of the arbitrators. Woods,
 
 supra; Portland Gen. Elec. Co., supra.
 
 The motion is therefore denied with respect to discovery directed at Twigden and Has-sard.
 

 A different, but also restrictive, standard applies with respect to discovery from an attorney for an opposing party. In
 
 Shelton v. American Motors Corp., 805
 
 F.2d 1328, 1327 (8th Cir.1986), the court held that before a deposition could be taken of an opposing counsel, the parties seeking such deposition must show:
 

 1) There is no other means to obtain the information;
 

 2) The information sought is nonprivi-
 

 leged and relevant; and
 

 3) The information is crucial to the preparation of the case.
 

 Id.
 

 There is little, if any, showing by Home as to what information it seeks from opposing counsel. Further, for reasons expressed above, much of the information sought is not relevant in determining whether evident bias permeated the arbitration process.
 

 This Court concludes that there is no showing of extraordinary circumstances which would otherwise justify the taking of discovery from an opposing counsel. Further, in that the Court already has held that the arbitrators may not be compelled to submit to discovery, the same principles apply with respect to the discovery sought from John Paisner and Company, as well as Jonathan Sacher, a partner at Paisner with Twigden.
 

 Based upon the foregoing, the Court finds that Home has not presented sufficient evidence in support of its motion for a limited discovery with respect to the issue of evident partiality or bias.
 

 IV.
 

 The Court now addresses the issues raised by Nationwide in support of its motion for partial summary judgment. Nationwide seeks to confirm the arbitration orders previously described. As noted by the Sixth Circuit in
 
 The Andersons, Inc. v. Horton Farms, Inc.,
 
 “The FAA [Federal Arbitration Act] expresses a presumption that arbitration awards will be confirmed.... Courts play only a limited roll in reviewing arbitration decisions ... [A] federal court may set aside an arbitration award under the FAA only upon a finding that certain statutory or judicial grounds are present.” 166 F.3d at 328 (citations omitted).
 

 V.
 

 The procedure for granting summary judgment is set forth in Fed.R.Civ.Pro. 56(c), which provides:
 

 The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
 

 The evidence must be viewed in the light most favorable to the nonmoving party.
 
 Adickes v. Kress & Co.,
 
 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; “that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.”
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary
 
 *905
 
 judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party’s case and on which that party will bear the burden of proof at trial.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);
 
 see also Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.,
 
 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
 

 The Sixth Circuit Court of Appeals has recognized that
 
 Liberty Lobby, Celotex,
 
 and
 
 Matsushita
 
 have effected “a decided change in summary judgment practice,” ushering in a “new era” in summary judgments.
 
 Street v. J.C. Bradford & Co.
 
 886 F.2d 1472, 1476 (6th Cir.1989). The court in
 
 Street
 
 identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment.
 
 Id.
 
 at 1479.
 

 In addition, in responding to a summary judgment motion, the nonmoving party “cannot rely on the hope that the trier of fact will disbelieve the movant’s denial of a disputed fact, but must ‘present affirmative evidence in order to defeat a properly supported motion for summary judgment.’”
 
 Id.
 
 (quoting
 
 Liberty Lobby,
 
 477 U.S. at 257, 106 S.Ct. 2505). The nonmov-ing party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion.
 
 Id.
 
 It is not sufficient for the nonmoving party to merely “ ‘show that there is some metaphysical doubt as to the material facts.’”
 
 Id.
 
 (quoting
 
 Matsushita,
 
 475 U.S. at 586, 106 S.Ct. 1348). Moreover, “[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.”
 
 Id.
 
 That is, the nonmoving party has an affirmative duty to direct the court’s attention to those specific portions of the record upon which is seeks to rely to create a genuine issue of material fact.
 

 VI.
 

 The Court has reviewed the voluminous record together with memoranda supplied by the parties. For the same reasons set forth above upon which this Court denied Home’s motion for limited discovery, the Court finds that Nationwide is entitled to confirmation of the awards issued to date by the Arbitration Panel. As also noted above, the Court is of the view that the orders issued by the Arbitration Panel are final in that they have resolved certain discrete issues which should now be confirmed.
 

 The only substantive objection raised by Home with respect to confirmation is its claim that, under 9 U.S.C. § 10, there was evident partiality on the part of the arbitrators or that the arbitrators exceeded their powers under the agreement to arbitrate. The Court first notes that Home has advanced little, if any, argument in support of its claim that the arbitrators exceeded their authority. The Court finds that the decisions rendered to date by the arbitrators have been made well within the authority conferred upon them by the original arbitration agreement.
 

 For the same reasons set forth above in denying Home’s motion for limited discovery, the Court also concludes that the evidence before it does not contain a genuine issue of material fact as to evident partiality on the part of the Arbitration Panel, or any of its members. As held in
 
 The Andersons, Inc. v. Horton Farms, Inc., supra,
 
 the party opposing confirmation must establish facts upon which a reasonable person would conclude that an arbitrator was partial to one party. Further, in
 
 Apperson v. Fleet Carrier Corporation, supra,
 
 the Sixth Circuit held that something more than an appearance of bias is required.
 

 The scope of review of an arbitration award under the FAA is extremely narrow. Only if one of the five grounds is established under 9 U.S.C. § 10 may the award be vacated. The Court concludes
 
 *906
 
 that the defendant has failed to establish any of the grounds for vacation. Consequently, the Motion for Summary Judgment which seeks confirmation of the awards issued to date by the Arbitration Panel is granted.
 

 VII.
 

 The Court therefore Orders as follows with respect to these pending motions: Second Motion of Nationwide for Order Confirming Award (Doc. # 136) is DENIED AS MOOT;
 

 Motion of Nationwide for judgment on the pleadings or partial summary judgment (Doc. # 137)-is GRANTED;
 

 Motion of Home for a status conference (Doc. #139) is DENIED AS MOOT; Motion of Home to stay confirmation and vacatur proceedings pending final award or, alternatively, a stay pending consideration of Home’s motion for discovery (Doc. # 140) is DENIED;
 

 Motion of Home to compel Nationwide’s compliance with the arbitration clause of reinsurance contract (Doc. # 142) is DENIED AS MOOT;
 

 Motion of Home to vacate or to modify the Arbitration Panel’s July 6, 1999 ruling (Doc. # 159) is DENIED;
 

 Motion of Home for limited discovery on arbitral bias and misconduct (Doc. # 160) is DENIED;
 

 Motion of Home for an order confirming an arbitration award of December 4, 1998 (Doc. # 190) is GRANTED;
 

 Third Motion of Nationwide for order confirming arbitration award (Docs.# 196) is GRANTED;
 

 Motion of Nationwide’s for reconsideration of this Court’s order issued September 29, 1999 (Doc. # 197) is GRANTED; and
 

 Cross-motion of Home to vacate the Arbitration Panel’s December 17, 1999 ruling (Doc. # 202) is DENIED.
 

 IT IS SO ORDERED.
 

 [1]
 

 . See Opinions and Orders, October 26, 1996, and March 25, 1997.
 

 [2]
 

 . The orders were issued on November 6, 1997, March 6, 1998, and September 11, 1998, and are described below.
 

 [3]
 

 . Nationwide has indicated in its motion for reconsideration that its previous motion to confirm security awards issued September 11, 1998 November 6, 1997 are now moot. The Court therefore orders that such portion of the motion (Doc. 84) is DENIED as moot.
 

 [4]
 

 . The facts in
 
 Commonwealth Coatings Corp.,
 
 involved an arbitrator who had earned substantial fees from an actual party, a portion of which involved the subject matter of the dispute referred to arbitration. The prior business relationship was not disclosed prior to the rendition of the arbitrator’s final decision.
 

 [5]
 

 . If a serious dispute arose between Home and Republic after Hassard began as a Panel member, a different result would be required. The runoff agreement, disclosed by Hassard, could result in a disqualifying dispute, but only if subsequent, events, not contemplated by the disclosure, would prevent Hassard from acting in the absence of an appearance of impropriety. No such subsequent, disqualifying events have been established by Home. The $7,000 dispute between two large insurance companies is not such a disqualifying event.. This amount is in no way owed personally to Hassard, which would have been a disqualifying event.