process." *Nationwide Mut. Ins. Co.*, 90 F. Supp. 2d at 904. Home has not explained why the information is crucial to the preparation of its case. The district court therefore did not abuse its discretion in finding that Home did not present "sufficient evidence in support of its motion for a limited discovery with respect to the issue of evident partiality or bias." *Id*.

Despite Home's alternative claim that the district court incorrectly applied the *Shelton* factors in evaluating its request for discovery, Home has failed to present any evidence that the representatives of Nationwide who met with Twigden were not in fact "opposing counsel." Moreover, even if the district court should have applied a more relaxed standard, Home has failed to demonstrate that "a reasonable person would have to conclude that an arbitrator was partial . . . ." *Andersons, Inc.*, 166 F.3d at 328-29.

We therefore conclude that the district court did not abuse its discretion in refusing to order discovery on the issue of evident partiality.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

---

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0038P (6th Cir.)
File Name: 02a0038p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

NATIONWIDE MUTUAL
INSURANCE COMPANY,
          *Plaintiff-Appellee,*

          *v.*                                            No. 00-3577

THE HOME INSURANCE
COMPANY,
          *Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 95-00880—Edmund A. Sargus, Jr., District Judge.

Argued: October 26, 2001

Decided and Filed: January 28, 2002

Before: BOGGS, GILMAN, and BRIGHT, Circuit Judges.[*]

---

[*] The Honorable Myron H. Bright, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1

———————————

**COUNSEL**

**ARGUED:**   Clifford  H.  Schoenberg,  CADWALADER,
WICKERSHAM  &  TAFT,  New  York,  New  York,  for
Appellant.  Michael L. Cohen, COHEN & BUCKLEY LLP,
Baltimore, Maryland, for Appellee. **ON BRIEF:** Clifford H.
Schoenberg,  Harry  P.  Cohen,  Philip  J.  Loree,  Jr.,
CADWALADER,  WICKERSHAM  &  TAFT,  New  York,
New  York,  Gerald  P.  Ferguson,  VORYS,  SATER,
SEYMOUR & PEASE LLP, Columbus, Ohio, for Appellant.
Michael L. Cohen, COHEN & BUCKLEY LLP, Baltimore,
Maryland, Stephen C. Gray, Randolph Carson Wiseman,
BRICKER & ECKLER LLP, Columbus, Ohio, for Appellee.

———————————

**OPINION**

———————————

   RONALD  LEE  GILMAN,  Circuit  Judge.    In  1995,
Nationwide Mutual Insurance Company filed suit against The
Home Insurance Company for breach of contract.  The district
court  referred  the  parties  to  arbitration  because  their
agreement contained an arbitration clause.  Prior to the final
resolution of the dispute, Nationwide sought confirmation of
various interim decisions issued by the arbitration panel.  The
district court confirmed the panel's interim decisions and
denied Home's motion for discovery on the alleged bias of the
arbitrators.  For the reasons set forth below, we **AFFIRM** the
judgment of the district court.

## I.  BACKGROUND

   Nationwide  entered  into  a  reinsurance  agreement  with
Home in 1977.  Under this agreement, Home undertook to
cover  certain  claims  that  might  be  asserted  against
Nationwide.  CIGNA Corporation subsequently assumed
Home's obligation under the agreement.

discretion standard.  *Dean v. Motel 6 Operating L.P.*, 134
F.3d 1269, 1276 (6th Cir. 1998).

   The district court denied Home's motion for discovery from
Hassard and Twigden because Home failed to offer "clear
evidence of improper conduct." *Nationwide Mut. Ins. Co.*, 90
F. Supp. 2d at 904.  Home argues that the district court's
decision constituted an abuse of discretion because Home
demonstrated "clear evidence of impropriety" or, in the
alternative, the district court erred in applying the "clear
evidence of impropriety standard."  The proper standard,
according to Home, is whether "a reasonable person would
have to conclude that an arbitrator was partial."  Even under
this relaxed standard, however, Home has failed to show that
the district court abused its discretion in refusing to allow
Home to depose the arbitrators to obtain evidence about their
relationship with Nationwide.

   The district court also denied Home's motion for discovery
from Nationwide's counsel because Home failed to make the
requisite showing necessary to take the deposition of an
opposing counsel.  Discovery from an opposing counsel is
"limited to where the party seeking to take the deposition has
shown  that  (1)  no  other  means  exist  to  obtain  the
information . . . ; (2) the information sought is relevant and
nonprivileged; and (3) the information is crucial to the
preparation of the case." *Shelton v. Am. Motors Corp.*, 805
F.2d 1323, 1327 (8th Cir. 1986) (citation omitted).  Home
claims that the district court's decision constituted an abuse
of discretion because Home demonstrated that no other means
exist to obtain the nonprivileged and crucial information.  In
the  alternative,  Home  argues  that  the  representatives  of
Nationwide  who  met  with  Twigden  socially  were  not
"opposing counsel," and thus the district court abused its
discretion by applying the above factors.

   Contrary to Home's argument, the district court found that
"much  of  the  information  sought  is  not  relevant  in
determining whether evident bias permeated the arbitration

the district court's assessment that the letters to Home's counsel did not exhibit bias, particularly given that the letters were written in response to letters initiated by counsel for Home.

Home further suggests that the arbitration panel's security decision demonstrates evident partiality because: (1) the decision was based on spreadsheets that Nationwide unilaterally compiled, (2) the arbitration panel had not ruled on whether it had authority to order costs, (3) the amount of the security was grossly excessive, and (4) the arbitration panel did not allow discovery or hold a hearing. The district court rejected this claim because "[a]n adverse award in and of itself is no evidence of bias absent some evidence of improper motivation." *Id*. at 901 (internal quotation marks and citation omitted).

Home claims that the district court erred because the arbitration panel's contemporaneous criticisms of Home provide independent evidence that the arbitration panel had an improper motive in making the security decision. We disagree. First, the panel's responses to the letters from Home's counsel were not inappropriate for the reasons stated above. Second, even the panel member selected by Home joined in the decision to order security for any damages that Nationwide might establish. Finally, the determination that the panel had the authority to make the security award was implicit in its decision on the merits. We therefore concur in the district court's finding that the arbitrators were not partial to Nationwide.

**D.   The district court did not abuse its discretion in refusing to order discovery on the issue of evident partiality**

As its final issue, Home contends that the district court erred in not allowing it to depose Hassard, Twigden, and Nationwide's counsel on the question of arbitral bias. We subject the denial of a request for discovery to an abuse of

Nationwide sued Home and CIGNA for breach of contract in 1995. Because the agreement between Home and Nationwide contained an arbitration clause, the district court entered a stay and ordered Home and Nationwide to submit the case to binding arbitration. The district court later ordered CIGNA to also submit to arbitration, but, on appeal, this court concluded that CIGNA could not be compelled to arbitrate, and that Nationwide had no claim directly against CIGNA. *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 150 F.3d 545, 549 (6th Cir. 1998).

Pursuant to the district court's opinion, Nationwide and Home submitted their dispute to arbitration. The arbitration panel consisted of three arbitrators: Simon Twigden, who was appointed by Nationwide; Robert C. Reinarz, who was appointed by Home; and William C. Hassard, who was then appointed by Twigden and Reinarz. On November 6, 1997, the arbitration panel ordered "Home to post pre-hearing security in the amount of $5,000,000 in the form of a letter of credit, a bond, or a deposit into an escrow account." Home objected to the decision, but the arbitration panel affirmed its ruling on September 11, 1998 (the security decision).

Prior to the final resolution of their dispute, Nationwide filed a new lawsuit seeking confirmation of the interim decisions issued by the panel of arbitrators. Home filed cross-motions to stay confirmation or to vacate the decisions, and for additional discovery on whether the arbitrators were biased.

On March 30, 2000, the district court denied Home's motion for discovery on the issue of arbitral bias and confirmed all of the arbitration panel's interim decisions. *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 90 F. Supp. 2d 893 (S.D. Ohio 2000). Home now appeals the district court's denial of its motion for additional discovery and the court's confirmation of the following three decisions by the arbitration panel: (1) the March 6, 1998 denial of Home's rescission claim (the rescission decision); (2) the July 6, 1999

order that Home pay $300,000 in costs (the costs decision); and (3) the December 17, 1999 order construing what constitutes a final decision under the arbitration agreement (the interpretation decision).

## II.  ANALYSIS

### A.  Subject matter jurisdiction

Although Home initially claimed that the district court lacked subject matter jurisdiction to confirm the arbitration panel's interim decisions, it subsequently withdrew that contention as an issue on appeal.  We thus have no need to consider the question as part of this opinion.

### B.  The district court did not err in refusing to vacate the costs decision on grounds of prejudicial misconduct

Home argues that the district court erred in not vacating the arbitration panel's costs decision under 9 U.S.C. § 10(a)(3).  Section 10(a)(3) provides that a district court may vacate an arbitration decision "[w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."

Home contends that the arbitration panel was guilty of misconduct because its costs decision was based on spreadsheets that were prepared by Nationwide without Home having an opportunity to conduct discovery.  Specifically, Home maintains that: (1) Nationwide's documentation of costs was inadequate, (2) the panel ordered Nationwide to produce more details, (3) Nationwide never provided more details, and (4) the panel denied discovery and failed to hold a hearing before ordering Home to pay costs.

We accept the district court's findings of fact unless clearly erroneous, and consider questions of law de novo when

The district court also correctly pointed out that the arbitration agreement states that the panel members would be active members of the insurance industry.  As a result, the parties should have expected that the business interests of the arbitrators might become entangled with those of the parties.  That a representative of Nationwide also made an offer to meet with Twigden socially further supports the conclusion that such meetings do not necessarily give rise to an inference of partiality.  In sum, none of Home's objections have sufficient merit to warrant setting aside the district court's determination that Twigden's meetings with Nationwide do not justify vacatur of the awards in question.

Home next argues that the arbitration panel colluded with Nationwide in attempting to immunize the security decision from review.  On September 11, 1998, the arbitration panel issued a "written confirmation" that its November 6, 1997 security decision was final as of the earlier date.  Home claims that the ruling was designed to prevent vacatur of the decision because, under the FAA, a motion to vacate must be filed within three months from the date the decision is issued.  9 U.S.C. § 12.  To the contrary, the district court found that the arbitration panel's September 1998 order was the result of Home having ignored the November 1997 order, and never posting the security awarded by the panel.  The district court did not err in finding that the arbitration panel's "written confirmation" of the 1997 security decision was an effort to have Home comply with the panel's original ruling, not an attempt to collude with Nationwide.

Home also claims that the arbitration panel exhibited evident partiality in a series of letters criticizing Home's counsel.  The district court found that this argument "borders on the frivolous," because Home's counsel had "engaged in an unrelenting, unremitting barrage of invectives impugning the integrity of the Panel members . . . ."  *Nationwide Mut. Ins. Co.*, 90 F. Supp. 2d at 902.  By comparison, the district court found the arbitration panel's responses to be "far more temperate, professional and appropriate."  *Id*.  We agree with

disclosed the June 1998 and August 1998 meetings in advance, and Home did not timely object to them; (2) neither Twigden nor his firm has any business relationship with Nationwide; (3) Twigden did not discuss the arbitration with Nationwide during the meetings; (4) Home did not begin its attacks on Twigden's purported bias until after the arbitration panel issued the adverse rescission and security decisions; (5) Home agreed to submit this claim to members of a panel who were actively involved in the insurance industry; and (6) counsel for Home had also offered to meet Twigden socially.

Home challenges each of the district court's findings. First, Home claims that Twigden did not disclose a second meeting that he allegedly had with Nationwide in August of 1998. Although Home concedes that neither Twigden nor his firm had a business relationship with Nationwide, it asserts that Twigden was actively soliciting business from Nationwide. Home also argues that, in finding that Twigden did not discuss the arbitration with Nationwide, the district court improperly relied on Twigden's unsworn statement. Next, Home claims that the arbitration panel's adverse rulings had no bearing on the company's decision to attack Twigden's purported bias. Home further points out that it did not agree to submit the dispute to an arbitrator who was involved in marketing legal services to Nationwide. Finally, Home suggests that its own counsel was simply making a friendly gesture when he offered to meet Twigden socially.

The district court's findings that only one meeting took place between Twigden and Nationwide in August of 1998, and that the arbitration proceedings were not discussed at either of the meetings between Twigden and Nationwide, are not clearly erroneous. Although Home now complains that the district court relied on an unsworn statement by Twigden in finding that the arbitration was not discussed, Home failed to timely object to the statement in the court below. Moreover, Home used portions of the same unsworn statement to support its own submission to the district court.

reviewing its denial of a motion to vacate an arbitration decision. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947-48 (1995). Additional deference is warranted where courts are called upon to review an arbitrator's decision. *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) ("It is well established that courts should play only a limited role in reviewing the decisions of arbitrators.") (internal quotation marks and citation omitted); *Lattimer-Stevens Co. v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir. 1990) ("When courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence."). "Arbitrators are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration procedures is merely whether a party to arbitration has been denied a fundamentally fair hearing." *National Post Office v. U.S. Postal Serv.*, 751 F.2d 834, 841 (6th Cir. 1985).

The arbitration panel considered Nationwide's submissions and Home's objections before "unanimously and finally" awarding Nationwide $300,000 for the costs it incurred in defending against rescission. This court has rejected the contention that an arbitration panel is required to hold a hearing or permit discovery on a nonmerits issue. *Louisiana D. Brown 1992 Irrevocable Trust v. Peabody Coal Co.*, No. 99-3322, 2000 WL 178554, at *5-6 (6th Cir. Feb. 8, 2000) (citations omitted) (unpublished table decision) (rejecting the argument that a losing party has "an absolute right to present evidence and confront witnesses"). "Fundamental fairness requires only notice, an opportunity to present relevant and material evidence and arguments to the arbitrators, and an absence of bias on the part of the arbitrators." *Id.* at *6. Because Home received copies of Nationwide's submissions on the costs it incurred in defending against rescission, and the arbitration panel gave Home an opportunity to respond to these submissions, it is not clear what purpose discovery or a hearing on this issue would have served. At the very least, Home had notice of Nationwide's claims and an opportunity to present counter-arguments. We therefore conclude that the

arbitration panel's procedure met the minimal standard of fundamental fairness. Accordingly, we affirm the district court's denial of Home's motion to vacate the July 6, 1999 costs decision.

**C.   The district court did not err in refusing to vacate the rescission and costs decisions on grounds of evident partiality**

Home also argues that the district court erred in not vacating the arbitration panel's rescission and costs decisions pursuant to 9 U.S.C. § 10(a)(2). Section 10(a)(2) provides that a district court  may vacate an arbitration decision "[w]here there was evident partiality or corruption in the arbitrators, or either of them." Home cites the following five instances of purported "evident partiality": (1) arbitrator Hassard's undisclosed involvement in a dispute with Home; (2) arbitrator Twigden's marketing meetings with Nationwide; (3) collusion between Nationwide and the arbitration panel to insulate the security decision from review; (4) the arbitration panel's hostility toward Home; and (5) the arbitration panel's security decision.

This court has held that evident partiality "will be found only where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 328-29 (6th Cir. 1998) (internal quotation marks and citation omitted). "The alleged partiality must be direct, definite, and capable of demonstration, and the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator." *Id*. at 329 (internal quotation marks and citations omitted).

Home's first argument is that Hassard failed to disclose his involvement in a dispute with Home. It acknowledges, however, that during an organizational meeting of the arbitration panel with Home and Nationwide, Hassard disclosed that he served as Chairman of the Board for a

company, Republic Financial Services, that had "a runoff relationship" with Home. *Nationwide Mut. Ins. Co.*, 90 F. Supp. 2d at 899. But Home claims that Hassard did not disclose that he was engaged in discussions concerning a dispute between Home and Republic regarding unpaid balances in the runoff account. Home also asserts that, contrary to the district court's $7,000 estimate, the amount of money involved in the dispute was $444,471.

The district court responded by noting that "Hassard disclosed the relationship between Home and Republic and described the ongoing runoff process," and that Home and Nationwide both stipulated that they waived subsequent objections as to bias or partiality stemming from matters disclosed at the organizational meeting. *Id*. at 902-03. Moreover, Hassard made a supplemental disclosure on October 28, 1998 that, based on his personal inquiry, Republic was claiming that Home owed it approximately $7,000. *Id*. at 903. The district court concluded that "the existence of a runoff relationship implies that a dispute could arise during the course of such relationship. Because such issues were clearly known to the parties before the arbitration began, Home cannot complain after the fact that the relationship exists." *Id*. (footnote omitted).

The district court's finding that the net amount in dispute between Republic and Home was relatively small is not clearly erroneous. Although Republic purportedly owed Home $444,471, Home apparently owed Republic $455,672. The net amount in dispute, therefore, was only the difference of approximately $11,201. Furthermore, as the district court pointed out, Hassard disclosed the runoff relationship before arbitration commenced. These facts do not support Home's claim of "evident partiality" on the part of Hassard.

Home also asserts that Twigden's meetings with Nationwide were for the purpose of marketing his legal services. But the district court enumerated six reasons why the meetings did not justify vacatur: (1) Twigden fully