IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 23, 2014 Session

## MORGAN KEEGAN & COMPANY, INC. v. MICHAEL STARNES, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-10-1717-1      Walter L. Evans, Chancellor**

_____

**No. W2012-00687-COA-R3-CV - Filed June 20, 2014**

_____

The trial court vacated an arbitration award in favor of Petitioner/Appellant Morgan Keegan & Company, Inc., on the basis of "evident partiality" and remanded the matter for re-arbitration before a different panel. We reverse and remand for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Michael A. Brady, Annie T. Christoff and Shepherd D. Tate, Memphis, Tennessee, and Peter S. Fruin, Birmingham, Alabama, for the appellant, Morgan Keegan & Company, Inc.

John James Heflin, III, Memphis , Tennessee, for the appellees, Michael S. Starnes, Laura M. Starnes f/k/a Laura Ann Murchison, The Michael S. Starnes Charitable Remainder Trust and TCX, Inc.

**OPINION**

The only issue presented by this appeal is whether the trial court erred by vacating an arbitration award in favor of Morgan Keegan & Company, Inc. ("Morgan Keegan") on the ground of evident partiality under the Federal Arbitration Act ("FAA") pursuant to 9 U.S.C. § 10(a)(2) and the Tennessee Uniform Arbitration Act ("TUAA") pursuant to Tennessee Code Annotated § 29-5-313(a)(1)(B)(2012). The background facts relevant to our disposition of this issue are largely undisputed. Respondents/Appellees Michael S. Starnes, Laura M. Starnes f/k/a Laura Ann Murchison, the Michael S. Starnes Charitable Remainder Trust, and TCX, Inc., (collectively, "Claimants") owned investment accounts at Morgan

Keegan.[1]  A portion of Claimants' portfolio included investments in the Regions Morgan Keegan Funds ("the RMK Funds").  The documents governing Claimants' accounts provided for dispute resolution by the Financial Industry Regulatory Authority ("FINRA"), the independent, non-governmental organization of the financial industry which conducts virtually all securities-related arbitration and mediation in the United States. *Morgan Keegan & Co. v. Smythe*, No. W2010-01339-COA-R3-CV, 2014 WL 2462853, at *1 n.1 (Tenn. Ct. App. May 29, 2014) (quoting see http:// www.finra.org/AboutFINRA/WhatWeDo (last visited April 28, 2014)).

In December 2008, Claimants filed an arbitration proceeding against Morgan Keegan following the collapse of the RMK Funds.  In their statement of claim, Claimants asserted claims of misrepresentation and omissions, breach of fiduciary duty, unsuitable investments, violation of Section 11 of the Securities Act as codified at 15 U.S.C. § 77k, violation of Section 12 of the Securities Act as codified at 15 U.S.C. § 77l, violation of Section 15 of the Securities Act of 1933, breach of the Securities Act of 1934, breach of the Tennessee Securities Act, fraud, negligence, failure of supervision, breach of contract, vicarious liability, and violation of the FINRA Rules.  Claimants sought compensatory damages in excess of $7 million, interest, and costs, and "reserve[d] the right to seek punitive damages." Claimants also filed state court actions against individual agents and advisors.

As provided by the FINRA rules governing disputes in excess of $100,000, a three-member arbitration panel consisting of two public arbitrators and a non-public arbitrator with extensive industry experience was selected and approved by the parties for arbitration of claims against Morgan Keegan. The panel ultimately agreed upon by the parties was composed of Elliott Zachary Seff (Mr. Seff), Public Arbitrator and Chair; Austin O'Toole (Mr. O'Toole), Public Arbitrator; and William Lacy (Mr. Lacy), the non-public arbitrator.  As required by the FINRA rules, the panel members filed disclosures including biographical information, potential conflicts, and other relevant information.  Following a somewhat tortured discovery process,  scheduling difficulties, and two continuances, arbitration proceedings commenced on Monday, August 16, 2010.  At the outset of the proceedings, Mr. Lacy recognized one of Morgan Keegan's expert witnesses, Steve Scales (Mr. Scales), and disclosed that he and Mr. Scales both worked at Dean Witter approximately twenty years earlier.  A brief exchange ensued between Mr. Lacy and Mr. Scales confirming that Mr. Lacy was the Dean Witter manager in Birmingham while Mr. Scales was the manager in Memphis in the late 1980's.  A more lengthy discussion ensued regarding whether Claimants' state court actions impacted the arbitration proceedings, opening

---

[1]Claimant Laura M. Starnes, formerly Laura Ann Murchison, is the wife of Claimant Michael S. Starnes.  The Michael S. Starnes Charitable Remainder Trust is a trust established by Mr. Starnes.  Claimant TCX, Inc. is a corporation owned by Mr. Starnes with its principal place of business in Tennessee.

statements were made by counsel, and examination of Claimants' first witness commenced.

When the proceedings recommenced on August 17, 2010, Claimants filed a motion to remove Mr. Lacy from the panel and requested that the proceedings be adjourned until a new panel could be assembled. Claimants alternatively requested a stay of the proceedings to permit them to seek injunctive relief in Tennessee State courts. Morgan Keegan opposed Claimants' motion and offered to release Mr. Scales as a witness and to replace him with another expert witness. Claimants rejected this offer and, apparently while the panel was in recess to consider their motion to recuse, filed a motion to stay the matter. Claimants' motions were denied. A lengthy and at times heated discussion ensued regarding whether recusal of Mr. Lacy was warranted, proper procedure under FINRA rules, and whether Mr. Seff's authority included "ordering" Claimants to participate in further proceedings while the matter was under review. Mr. Seff "warn[ed]" Claimants' counsel, "on behalf of the parties and FINRA, [that] the failure to proceed could result in the imposition of sanctions" under FINRA rules. Counsel for Claimants refused to proceed further; refused to permit further examination of Claimants' witness; refused the panel's offer to temporarily adjourn at the end of the week; and informed the panel that he and Claimants would not participate the next day. Claimants did not appear when the proceedings resumed on August 18 and Morgan Keegan presented its case. On September 20, 2010, the panel denied Claimants' claims in their entirety and awarded Morgan Keegan attorneys' fees in the amount of $235,578.10 and costs in the amount of $29,720.74.

On September 21, 2010, Morgan Keegan filed a petition to confirm the arbitration award in the Chancery Court for Shelby County. Claimants filed an answer in opposition to Morgan Keegan's petition and counter-petitioned for vacatur on the grounds of misconduct and evident partiality on the part of Mr. Lacy and the panel under the Federal Arbitration Act as codified at 9 U.S.C. § 10(a)(2), (3) and Tennessee Code Annotated § 29-5-313(a). They also asserted that the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award was not made under 9 U.S.C. § 10(a)(4) and Tennessee Code Annotated § 29-5-313(a)(1)(C). Following protracted proceedings in the trial court, the matter was heard on January 5, 2012. On January 19, 2012, the parties again appeared before the trial court to address the status of the matter in light of the court's oral ruling that Morgan Keegan's motion to confirm would be held in abeyance pending re-arbitration. Morgan Keegan urged the court to reconsider this ruling, asserting that, "by implication and for all practical effects," the trial court had denied its motion to confirm the arbitration award. By order entered January 19, 2012, the trial court granted Claimants' counter-petition for vacatur on the ground of evident partiality and remanded the matter for a new hearing before a different FINRA arbitration panel. The trial court also held Morgan Keegan's motion to confirm the arbitration award "in abeyance" pending the outcome of re-arbitration before a different panel.

Morgan Keegan filed a notice of appeal to this Court on February 17, 2012. On the same day, Morgan Keegan also filed a motion for interlocutory appeal in light of that part of the trial court's order holding its motion to confirm in abeyance pending re-arbitration. In April 2012, Claimants filed a motion to dismiss Morgan Keegan's appeal on the ground that the trial court's judgment was not final where it held Morgan's Keegan's motion to confirm in abeyance. In its response, Morgan Keegan urged this Court to deny Claimants' motion, asserting the trial court's order was final and appealable. By order entered July 30, 2012, we denied Claimants' motion to dismiss and held the matter in abeyance pending the Tennessee Supreme Court's judgment *in Morgan Keegan & Co. v. William Hamilton Smythe, III*, No. W2011-01339-SC-R11. By order entered January 24, 2013, we stayed the trial court proceedings and specifically stayed operation of the trial court's judgment remanding the matter for re-arbitration. The supreme court filed its judgment in *Morgan Keegan v. Smythe* on April 25, 2013. On October 7, 2013, Morgan Keegan moved to lift the stay of its appeal and to dismiss its motion for interlocutory appeal. In its motion, Morgan Keegan asserted that the trial court's judgment must be considered final under *Morgan Keegan v. Smythe*. In their response, Claimants expressed no objection to dismissal of Morgan Keegan's interlocutory appeal and to the lifting of the stay imposed on Morgan Keegan's Rule 3 appeal. We granted Morgan Keegan's motion by order entered October 8, 2013, and oral argument was heard on April 23, 2014.

### *Standard of Review*

The FINRA rules and applicable statutory framework governing this matter were recently examined by the supreme court in *Morgan Keegan & Co. v. Smythe*, 401 S.W.3d 595 (Tenn. 2013), and we find it unnecessary to engage in that examination here. It is well-settled that "courts should play only a limited role in reviewing the decisions of arbitrators." *Arnold v. Morgan Keegan & Co.*, 914 S.W.2d 445, 448 (Tenn.1996) (*citing United Paperworkers Int'l Union, AFL–CIA v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 369 (1987)). Therefore, the courts will set-aside arbitrators' determinations "'only in very unusual circumstances.'" *Id*. (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S.Ct. 1920, 1923 (1995)). "'[T]he standard for judicial review of arbitration procedures is merely whether a party to arbitration has been denied a fundamentally fair hearing.'" *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 625 (6th Cir2002) (quoting *National Post Office v. U.S. Postal Serv.*, 751 F.2d 834, 841 (6th Cir.1985)). We have observed that judicial review of an arbitration decision is "'"one of the narrowest standards of judicial review in all of American jurisprudence."'" *Morgan Keegan & Co. v. Smythe*, No. W2010-01339-COA-R3-CV, 2014 WL 2462853, at *2 (Tenn. Ct. App. May 29, 2014) (quoting *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 305 (6th Cir.2008) (quoting *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir.2005) (quoting *Lattimer-Stevens Co. v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir.1990)))). We review a trial court's

findings of fact in an arbitration case under a "clearly erroneous standard." *Williams Holding Co. v. Willis*, 166 S.W.3d 707, 710 (Tenn. 2005) (citation omitted). We review questions of law *de novo*, however, with no presumption of correctness. *Pugh's Lawn Landscape Co. v. Jaycon Dev. Corp.*, 320 S.W.3d 252, 258 n. 4 (Tenn.2010)).

## *Discussion*

Before turning to the issue presented for our review, we first turn to the procedural posture of this case. As noted above, the trial court neither granted nor denied Morgan Keegan's petition to confirm the arbitration award in its January 2012 order, but held it in abeyance pending re-arbitration. We stayed the matter pending the supreme court's judgment in *Morgan Keegan & Co. v. Smythe*, which was filed on April 25, 2013. *See Morgan Keegan & Co. v. Smythe*, 401 S.W.3d 595 (Tenn. 2013)(" *Smythe I* "). In *Smythe I*, the supreme court held that

> [a]n order that vacates an arbitration award and orders a second arbitration is an order "denying confirmation of an award" for the purposes of Tenn. Code Ann. § 29-5-319(a)(3), regardless of whether the party opposing the petition to vacate the award filed a separate cross-petition for confirmation under Tenn. Code Ann. § 29-5-312 or whether the trial court has expressly denied confirmation in its written order.

*Smythe I*, 401 S.W.3d at 612. In *Smythe*, no motion to confirm the arbitration award was filed. *Id.* at 600. In the current case, however, the trial court curiously held Morgan Keegan's motion to confirm in abeyance, thereby apparently indicating its intention to retain jurisdiction pending re-arbitration. Thus, as an initial matter, we must determine whether we have jurisdiction over this appeal.

## *Jurisdiction and Finality*

Our jurisdiction of this matter is governed by Tennessee Code Annotated § 29-5-319(a)(2012). *Smythe I*, 401 S.W.3d at 602. It is well-settled that

> our role in construing a statute is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. To do this, we focus initially on the statute's words, giving these words their natural and ordinary meaning in light of their statutory context. We avoid any forced or subtle construction that would limit or extend the meaning of the language. Every word in a statute is presumed to have meaning and purpose. If the statutory language is clear and unambiguous, we

apply the statute's plain language in its normal and accepted use. We need look no further than the statute itself, enforcing it just as it is written.

*Id.* (quoting *Keen v. State*, 398 S.W.3d 594, 610 (Tenn. 2012) (internal citations and quotation marks omitted); citing *see also Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)). If the statutory language is ambiguous, however, we may discern its meaning by examining "the broader statutory scheme, the history of the legislation, or other sources[.]" *Id.* (citing *Leggett v. Duke Energy Corp.*, 308 S.W.3d at 851–52 (citing *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn.2008))). In light of the supreme court's reasoning in *Smythe I*, we agree with Morgan Keegan that the trial court's order with respect to Morgan Keegan's motion to confirm the arbitration award may properly be construed as a denial of Morgan Keegan's motion for the purposes of appellate jurisdiction under section 29-5-319(a)(3)(2012).

In *Bronstein v. Morgan Keegan & Co.*, the trial court neither confirmed nor denied Morgan Keegan's motion to confirm the arbitration award, but determined that it was moot in light of its judgment vacating the award and ordering re-arbitration before a new panel. *Bronstein v. Morgan Keegan & Co.*, No. W2011-01391-COA-R3-CV, 2014 WL 1314843, at *2 n.2 (Tenn. Ct. App. April 1, 2014). We determined that, in light of *Smythe I*, we had jurisdiction to adjudicate the appeal "notwithstanding the trial court's disinclination to specifically deny Morgan Keegan's cross-motion to confirm the arbitration award." *Id.*

Notwithstanding its order holding the motion in abeyance in this case, the trial court's judgment necessarily denied Morgan Keegan's motion to confirm the 2010 FINRA arbitration award. *See Smythe I*, 401 S.W.3d at 608 (stating: "there can be no doubt that the trial court[] . . . necessarily denied [respondent's] request for confirmation when it granted [petitioner's] petition to vacate the award."). Should the matter be re-arbitrated as ordered by the trial court, the 2010 award would be rendered ineffective and Morgan Keegan's motion to confirm it would be meaningless. Under *Smythe I*, an order that does not expressly confirm an arbitration award may fairly be construed as denying it for the purposes of section 29-5-319(a)(3), notwithstanding the lack of jurisdiction under section 29-5-319(a)(5). *See id.* at 609. Accordingly, we are satisfied that we may exercise jurisdiction over this appeal under Tennessee Code Annotated § 29-3-319(a)(3).

Upon further review of the record following oral argument, however, we observe that, in their cross-petition to vacate the award and remand for a new hearing, Claimants asserted three distinct grounds: evident partiality under 9 U.S.C. § 10(a)(2), misconduct under § 10(a)(3), and that the arbitrators exceeded or imperfectly executed their powers under § 10(a)(4). The trial court vacated the award on the ground of evident partiality but did not adjudicate Claimants' allegations of misconduct on the part of Mr. Lacy and on the part of

the panel as a whole or Claimants' allegation that the panel exceeded its powers. Notwithstanding appellate jurisdiction over a judgment that implicitly denies a motion to confirm for the purposes of Tennessee Code Annotated § 29-5-319(a)(3), neither the statute nor *Smythe I* stand for the proposition that a motion to vacate an arbitration award on multiple grounds may be serially adjudicated and appealed piecemeal.

Pursuant to Rule 3, this Court generally assumes jurisdiction over appeals from final judgments only. *Bayberry Assoc. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990). Rule 3(a) of the Tennessee Rules of Appellate Procedure provides, in relevant part:

> In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right. Except as otherwise permitted in rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

Under certain circumstances, a judgment which adjudicates fewer than all of the claims asserted by the parties may be made final and appealable pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. In order to enter judgment under Rule 54.02, however, the trial court must make an explicit finding that there is "no just reason for delay" and must expressly direct that a final judgment be entered. Tenn. R. Civ. P. 54.02. An order is not properly made final pursuant to Rule 54.02 unless it disposes of an entire claim or is dispositive with respect to a party. *Bayberry Assoc.*, 783 S.W.2d at 558. In the absence of an order meeting the requirements of Rule 54.02, any trial court order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not final or appealable as of right. *Id.*

We have held that, notwithstanding the finality requisites of Rule 3, Tennessee Code Annotated § 29-5-319(a)(1) provides for an appeal as a matter of right from an order denying a motion to compel arbitration. *Philpot v. Tenn. Health Mgmt., Inc.*, 279 S.W.3d 573, 578 (Tenn. Ct. App. 2007)(perm. app. denied Feb. 17, 2009). A trial court's order compelling arbitration, however, is not appealable under the statute. *T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W.3d 861, 865 (Tenn. Ct. App. 2002). Section 29-5-319(b), moreover, provides that an appeal pursuant to the section "shall be taken in the manner and to the same extent as from orders or judgments in a civil action."

In *Bronstein*, we stated,

although we have jurisdiction to adjudicate this appeal under *Morgan Keegan v. Smythe*, we do not perceive *Smythe* to stand for the proposition that petitions asserting multiple grounds to set-aside an arbitration award, and defenses thereto, may be serially litigated and appealed. Such serial litigation would be a considerable misuse of judicial resources and the time and resources of the parties. *See Morgan Keegan v. Smythe*, 401 S.W.3d 595, 610 (Tenn.2013) (noting "the interests of 'speed, simplicity, and economy'" advanced by the arbitration process, and seeking to avoid the loss of time and resources resulting from "do-over" proceedings.); *White v. Empire Express, Inc.*, No. W2010-02380-COA-R3-CV, 2011 WL 6182091, at *7 n.14 (Tenn. Ct. App. Dec. 13, 2011) (noting, with respect to the appealability of an order compelling arbitration under the FAA, "We are mindful that, under the Federal Arbitration Act, an order compelling arbitration and dismissing all of the claims before it is considered to be a final, appealable order." *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 88–89 (2000)). Nevertheless, even if the FAA were applicable to the underlying contract, the state law on appealability governs this procedural issue. *Morgan Keegan & Co. v. Smythe*, No. W2010-01339-COA-R3-CV, 2011 WL 5517036 (Tenn. Ct. App. Nov. 14, 2011). Even under federal jurisprudence, however, it appears that the rule on appealability applies only when the trial court has dismissed all of the claims before it and leaves nothing for the trial court to decide. When some claims are arbitrable but others are not, an order dismissing and compelling arbitration of the arbitrable claims only is not a final, appealable order. *See In re Hops Antitrust Litigation*, 832 F.2d 470, 473-74 (8th Cir.1987); *see Green Tree*, 531 U.S. at 88-89.

*Bronstein*, 2014 WL 1314843, at *5 (footnote omitted). In *Bronstein*, we found it unnecessary to determine whether, notwithstanding section 29-5-319(a)(3), the trial court's order was appealable where it did not adjudicate all the grounds for vacatur asserted by the petitioner. We reached this conclusion in light of our holding that petitioner failed to carry his burden of proof on *any* ground where petitioner failed to introduce any evidence, including the arbitration record, until more than one month after the trial court entered judgment in the matter. *Id.*

We observed in *Bronstein* that the *Smythe I* court "did not address whether the trial court in that case had adjudicated all the grounds asserted by Petitioner Morgan Keegan as justifying vacatur of the arbitration award in that case." *Id.* n.7. Upon remand in *Smythe*, we directed the parties to obtain entry of a judgment adjudicating Morgan Keegan's claim of misconduct or misbehavior on the part of the arbitrators. *Morgan Keegan & Co. v. Smythe*, No. W2010-01339-COA-R3-CV, 2014 WL 2462853, at *2 (Tenn. Ct. App. May 29,

2014)("*Smythe II*"). The trial court entered an order denying Morgan Keegan's motion to vacate on the basis of misconduct, that judgment was not appealed, and we reversed the trial court's judgment vacating the FINRA arbitration award in that case on the ground of evident partiality. *Id.*

In this case, Claimants alleged 13 acts on the part of Mr. Lacy and the panel in support of their assertion that the arbitrators exceeded their power and were guilty of misconduct as grounds for vacatur in their October 2010 petition. Similarly, they devote a considerable portion of their brief to this Court to the question of misconduct and the execution of powers by the panel. In its reply brief, Morgan Keegan asserts that the trial court "rejected" these claims with respect to Mr. Lacy and the panel. Morgan Keegan references nothing in the record to support this assertion, however. In its January 19, 2012, order granting Claimants' counter-petition to vacate, the trial court found that Claimants had "demonstrate[d] evident partiality justifying vacatur of the award" but did not address Claimants' claims of misconduct or whether the panel had exceeded or misapplied its powers. These claims clearly have not been adjudicated in the trial court with respect to either Mr. Lacy or the panel.

As noted above, we generally assume jurisdiction over final judgments and we have emphasized that piecemeal appeals of a matter are disfavored. *E.g., Tuturea v. Tenn. Farmers Mut. Ins. Co.*, No. W2006-02100-COA-R3-CV, 2007 WL 2011049, at *3 (Tenn. Ct. App. July 12, 2007). In the context of judgments made final pursuant to Tennessee Rule of Civil Procedure 54.02, moreover, we have held that:

> "[o]rders certifying interlocutory judgments as final 'should not be entered routinely' and 'cannot be routinely entered as a courtesy to counsel.' Such orders must be supported by a record indicating why there is 'no just reason for delay,' and will preferably include specific findings of fact to that effect." *Harris v. Chern*, 33 S.W.3d 741, 745, n. 3 (Tenn. 2000)(quoting *Huntington Nat'l Bank v. Hooker*, 840 S.W.2d 916, 921-22 (Tenn. Ct. App.1991)). Noting the disfavor of judgments pursuant to Rule 54.02 which result in piecemeal appellate review, in *In re Adoption of A.B.K.* this Court held that the trial court's entry of final judgment pursuant to Rule 54.02 was not appropriate in an action to terminate parental rights and for adoption where, regardless of how we determined the issues raised on appeal, the matter would likely be brought before this Court again. *In re Adoption of A.B.K.*, No. E2001-02199-COA-R3-CV, 2002 WL 1042183, (Tenn. Ct. App. May 23, 2002) (*no perm. app. filed*).

*Id.*

We have held that "[i]n permitting and indeed encouraging arbitration of disputes, the legislature sought to facilitate and promote a quicker, more cost effective, less cumbersome, yet binding means of dispute resolution." *T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W.3d 861, 868 (Tenn. Ct. App. 2002). As the current case demonstrates, neither arbitration nor the review of an arbitration decision are necessarily quick, inexpensive, or simple. With respect to appellate review, the *Smythe I* court noted that the applicable FAA section is

> a pro-arbitration statute designed to prevent the appellate aspect of the litigation process from impeding the expeditious disposition of an arbitration. Its inherent acknowledgment is that arbitration is a form of dispute resolution designed to save the parties time, money, and effort by substituting for the litigation process the advantages of speed, simplicity, and economy associated with arbitration. Its theme is that judicial involvement in the process should be kept to the barest minimum to avoid undermining those goals.

*Smythe I*, 401 S.W.3d at 609 (quoting David D. Seigel, *Practice Commentary: Appeals from Arbitrability Determinations*, 9 U.S.C.A. § 16, at 7470). In order to encourage the expeditious disposition of appeals and in the interest of judicial economy, the "finality" requirements contained in Rule 3 generally must be met with respect to the adjudication of all grounds asserted for vacatur before we assume jurisdiction over a trial court order vacating an arbitration award and remanding it to be re-arbitrated.[2]

Pursuant to Rule 2 of the Tennessee Rules of Civil Procedure, however, we may suspend the finality requirements of Rule 3 for good cause in extenuating circumstances. *Bayberry Assoc. v. Jones,* 783 S.W.3d 553, 559 (Tenn. 1990); *Williams v. Tennessee Farmers Reassurance Co.*, No. M2010-01689-COA-R3-CV, 2011 WL 1842893, at *4-6 (Tenn. Ct. App. May 12, 2011)(stating: "[t]his Court will suspend the finality requirements of Rule 3 of the Tennessee Rules of Appellate Procedure only in the most extenuating circumstances, where justice so demands."). In light of the tortured history of this case, the prolonged pendency of the matter in this Court, and the trial court's previous orders refusing to stay enforcement of its order to re-arbitrate pending appellate review, we conclude that justice and judicial economy are best served by considering the merits of the issue presented for our review. We accordingly turn to whether the trial court erred by vacating the FINRA arbitration award on the ground of evident partiality as provided by Tennessee Code Annotated § 29-5-313(a)(1)(B) and 9 U.S.C. § 10(a)(2).

---

[2]Section 29-5-319(a)(5) provides that an appeal may be taken from an order vacating an arbitration award without directing a re-hearing. Under *Smythe I*, an appeal may also be taken from an order vacating an award and directing a re-hearing pursuant to § 29-5-319(a)(3).

### *Applicable Standard*

In their memorandum in support of their October 2010 counter-petition, Claimants submitted that "[t]he overwhelming weight of authority recognizes the principle that arbitrator recusal is required to avoid even the appearance of bias." As we recently observed in *Smythe II*, however,

> [f]or the purpose of cases governed by the FAA, the courts will find evident partiality only where a reasonable person could only conclude that an arbitrator was partial to one of the parties. *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 328–329 (6th Cir.1998)(quoting *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir.1989) (adopting standard announced *in Morelite Const. Corp. v. New York City District Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir.1984))). Although this standard does not require proof of actual bias, it "requires a showing greater than an 'appearance of bias[.]'" *Id.* (quoting *id.* at 1358)). Although it is an objective standard, it is "less exacting than the one governing judges." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 682 (7th Cir.1983)(cert. denied 464 U.S. 1009, 104 S.Ct. 529 (1983)); mandate amended by 728 F.2d 943 (7th Cir.1984). Additionally, as noted above, " "the party seeking invalidation must demonstrate more than an amorphous institutional predisposition toward the other side; a lesser showing would be tantamount to an "appearance of bias" standard"" that the Sixth Circuit has rejected. *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 645 (6th Cir.2005)(quoting *Andersons, Inc.*, 166 F.3d at 329)). In *Bronstein*, we adopted the standard set-forth by the Sixth Circuit. *Bronstein*, 2014 WL 1314843, at \*3.

*Smythe II*, 2014 WL 2462853, at \* 4. There is no dispute that this matter is governed by the substantive provisions of the FAA. We accordingly turn to whether Claimants carried their heavy burden to demonstrate that a reasonable person would have to conclude that Mr. Lacy was biased against them in this matter and that he acted with improper motivation.

### *Evident Partiality*

The TUAA requires a reviewing court to vacate an arbitration award upon proof of evident partiality on the part of an arbitrator. Tenn. Code Ann. § 29-5-313; *Pugh's Lawn Landscape Co. v. Jaycon Dev. Corp.*, 320 S.W.3d 252, 259 (Tenn. 2010). As we observed in *Smythe II*,

> the party challenging the arbitrators' decision must show that a reasonable

person would have to conclude that an arbitrator was partial to the other party to the arbitration. *Bronstein v. Morgan Keegan & Co.*, No. W2011-01391-COA-R3-CV, 2014 WL 1314843, at *3, (Tenn. Ct. App. April 1, 2014) (quoting *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 306 (6th Cir. 2008)(quoting *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir. 1989) (quoting *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir.1984)), cert. denied, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 533 (1990); *see also Nationwide IV*, 429 F.3d at 645; *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 626 (6th Cir.2002) (" Nationwide II ")). The challenging party is required to establish specific facts that indicate improper motives on the part of the arbitrator. *Id.* (quoting *id.* (quoting *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 329 (6th Cir.1998) (internal quotation marks omitted) (quoting *Consolidated Coal Co. v. Local 1643, United Mine Workers*, 48 F.3d 125, 129 (4th Cir.1995)))). The alleged partiality must be direct, definite, and capable of demonstration, *Id.* (quoting *Nationwide v. Home*, 278 F.3d at 626 (quoting *Andersons*, 166 F.3d at 329)), and an amorphous institutional predisposition toward the other side is not sufficient because that would simply be the appearance-of-bias standard that [the Sixth Circuit] [has] previously rejected. *Id.* (quoting *Uhl*, 512 F.3d at 307 (quoting *Consolidated Coal*, 48 F.3d at 129)).

Smythe II, 2014 WL 2462853, at *3 (internal quotation marks omitted). As in *Smythe* and *Bronstein*, the question here is whether the party challenging the arbitration award carried its heavy burden to demonstrate specific facts indicating that the arbitrator acted with improper motivation. *Id.* (citations omitted). ""[T]he showing required to avoid confirmation" of an arbitration award "is very high."" *Id.* (quoting *STMicroelectronics, N.V. v. Credit Suisse Securities (USA), LLC*, 648 F.3d 68, 74 (2nd Cir. 2011)(quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2nd Cir.2006))). "Although actual bias is difficult to demonstrate, evident partiality requires specific, definite proof that is 'powerfully suggestive of bias.'" *Id.* at *8 (quoting *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 681 (7th Cir. 1983)).

In their counter-petition to vacate the arbitration award, Claimants referenced a number of acts on the part of Mr. Lacy and the panel which they alleged demonstrate misconduct, evident partiality, and imperfectly executed powers. In their brief, Claimants assert that Mr. Lacy's failure to disclose his prior business relationship with Mr. Scales before the commencement of the proceedings in violation of FINRA Rule 12405, his "angr[y] react[ion] to [Claimants'] suggestion" that the relationship should have been previously disclosed, and his "obstinate[] refus[al] to recuse himself" demonstrate evident

-12-

partiality on his part. They contend that, "[c]aught by surprise, [they] had no opportunity to assess the severity of the previously undisclosed conflict of interest" until after the first day of the proceedings had concluded, and that this conflict was demonstrated by Mr. Lacy's "aggressive cross-examination" of Claimants' first witness, Lee Piovarcy (Mr. Piovarcy), a Memphis attorney who serves as Trustee of the Michael Starnes Charitable Remainder Trust. Claimants submit that Mr. Lacy "parrot[ed] Morgan Keegan's asserted defenses . . . and challenged [Mr.] Piovarcy's credibility and competence." Claimants also assert that, despite "downplaying" his relationship with Mr. Scales "to avoid a challenge for bias[,]" Mr. Lacy engaged in an *ex parte* communication with Mr. Scales on the day of the proceedings. Claimants submit that Mr. Scales and Mr. Lacy appeared "jovial, seemed very familiar, and recalled mutual acquaintances at Dean Witter." They assert that, "[c]ontrary to [Mr.] Lacy's 'guarantee' that he wouldn't know [Mr.] Scales from Adam if there were only two men to choose from, their *ex parte* conversation demonstrated overt affinity and evident partiality."

We begin our discussion of this issue by noting that it is undisputed that the FINRA rules require prospective arbitrators to disclose prior and present relationships with other participants in the proceedings and that this duty is an on-going one. It is also undisputed that Mr. Lacy did not disclose his previous relationship with Mr. Scales before the first day of the proceedings. Mr. Lacy and Morgan Keegan describe this relationship as a superficial, professional acquaintanceship that the two men had while they were employed by Dean Witter in different cities more than twenty years ago. Claimants characterize the relationship between Mr. Lacy and Mr. Scales as one that had continued over more than twenty years.

Upon review of the transcript of the arbitration proceedings, we find that the exchanges between Mr. Lacy and Mr. Scales demonstrate that the two men knew each other briefly some twenty years earlier when Mr. Lacy was a manager with Dean Witter in Birmingham and Mr. Scales was a manager in Memphis. Mr. Lacy stated on the first day of the proceedings that the "only connection" the two men had was that they were employed by the same company in the same region. Mr. Scales confirmed this characterization, stating that the two men worked in the same region in the late 1980's, that they "may have had one or two regional meetings where there were 100 people in the meeting for a day and a half, two and a half days in Atlanta or New York." Mr. Scales stated that managers within a region did not have regular or frequent contact unless they formed a personal friendship at meetings, and that he and Mr. Lacy did not form such a friendship. There is nothing in the record to demonstrate that the relationship between the two men was on-going, that they had engaged in a social relationship or friendship, or that they had either a social or professional relationship - or even professional contact - in the intervening twenty years.

Claimants rely on an affidavit of Judy Ann Tidwell (Ms. Tidwell), an assistant in the office of Claimants' counsel, in support of their assertion that alleged *ex parte*

-13-

communication between Mr. Lacy and Mr. Scales demonstrates evident partiality on Mr. Lacy's part.  In her affidavit, Ms. Tidwell stated that on August 17, 2010, when she returned after lunch to the conference room where the arbitration proceedings were held, Mr. Scales and Mr. Lacy were engaged in a conversation that "seemed very friendly and familiar."  Ms. Tidwell stated that Mr. Scales and Mr. Lacy "were having a conversation about acquaintances that they each remembered from the days when they had worked together, specifically people that each recalled from Dean Witter."  The record contains neither evidence nor allegation that Mr. Lacy and Mr. Scales discussed any matter relating to Claimants, Morgan Keegan, the matters subject to arbitration, or the arbitration proceedings.

Upon review of the transcript of the arbitration proceedings, we cannot agree with Claimants' characterization of Mr. Lacy's questioning of Mr. Piovarcy as "hostile."  Mr. Piovarcy was questioned by all members of the panel, counsel for Morgan Keegan and counsel for Claimants.  The transcript does not reflect that Mr. Lacy's questions were "aggressive" or indicative of bias or prejudice.

As noted above, Mr. Lacy was the non-public arbitrator in this case.  We have noted that "'[t]he most sought-after' arbitrators 'are those who are prominent and experienced members of the specific business community in which the dispute to be arbitrated arose.'" *Smythe II*, 2014 WL 2462853, at *6 (quoting *STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC*, 648 F.3d 68, 77 (2nd Cir.2011)).  "'[S]ome degree of overlapping representation and interest inevitably results.'" *Id.* (quoting *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 646 (6th Cir.2005) (quoting *Int'l Produce, Inc. v. A/SRosshavet*, 638 F.2d 548, 552 (2nd Cir.1981))).  Further,

> to disqualify any arbitrator who had professional dealings with one of the parties (to say nothing of a social acquaintanceship) would make it impossible, in some circumstances, to find a qualified arbitrator at all. Mindful of the trade-off between expertise and impartiality, and cognizant of the voluntary nature of submitting to arbitration, we read Section 10(b) as requiring a showing of something more than the mere "appearance of bias" to vacate an arbitration award. To do otherwise would be to render this efficient means of dispute resolution ineffective in many commercial settings.

*Id.* (quoting *Morelite Const. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 83–84 (2nd Cir.1984)(footnote omitted)).  There is nothing in this record to demonstrate that Mr. Lacy and Mr. Scales relationship was anything other than a brief, casual, professional acquaintanceship that occurred more than twenty years ago.  Additionally, small-talk not related to the matter and the exchange of pleasantries among panel members and arbitration participants during breaks in the proceedings do not indicate

-14-

bias or evident partiality. *See Greer v. Delgrolice,* No. 1 CA-CV 13-0122, 2014 WL 2157026, at *1 (Ariz. Ct. App. May 20, 2014); *Arora v. TD Ameritrade, Inc.*, No. CV 10-01216 CW, 2010 WL 2925178, at *6 (N. D. Cal. July 26, 2010). The record does not indicate that improper *ex parte* communication took place in this case. There is no evidence that Mr. Lacy had a financial interest in the outcome of the proceedings, either direct or indirect. Claimants have failed to carry their heavy burden to demonstrate evident partiality on the part of Mr. Lacy. We accordingly reverse vacatur of the arbitration award on the ground of evident partiality.

## *Holding*

In light of the foregoing, the trial court's judgment vacating the FINRA arbitration award on the ground of evident partiality is reversed. We decline to address Claimants' arguments that vacatur is justified on the grounds of misconduct and the exceeding of powers by the panel as requiring an advisory opinion where the issues have not been adjudicated by the trial court. This matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs on appeal are taxed to the appellees, Michael S. Starnes, Laura M. Starnes f/k/a Laura Ann Murchison, the Michael S. Starnes Charitable Remainder Trust, and TCX, Inc.

_____
DAVID R. FARMER, JUDGE